IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Armando Serrano, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 17-CV-2869 |
| | ) | Honorable Manish S. Shah |
| Reynaldo Guevara, et al., | ) | Honorable Susan E. Cox, Magistrate |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| Jose Montanez, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 17-CV-4560 |
| | ) | Honorable Manish S. Shah |
| Reynaldo Guevara, et al., | ) | Honorable Susan E. Cox, Magistrate |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S MOTION FOR PROTECTIVE ORDER FORBIDDING PLAINTIFFS' PURPORTED "STREET FILES" DISCOVERY**

Defendant, City of Chicago, by and through its undersigned attorneys, and pursuant to Federal Rule of Civil Procedure Rule 26(c), hereby moves for the entry of a protective order forbidding Plaintiff from conducting certain *Monell* discovery pertaining to the Chicago Police Department's (CPD) maintenance and disclosure of investigative records. In support thereof, Defendant City states:

1. As this Court is aware, Plaintiffs' underlying claims are essentially that they were wrongfully convicted for the murder of Rodrigo Vargas because Defendant Officers and Defendant Prosecutors framed them by fabricating and manipulating witness testimony. In contrast, Plaintiffs' *Monell* claims against the City are incredibly general and broad, and none are

sufficiently tethered to Plaintiffs' underlying claims against Defendant Officers to warrant embarking on *Monell* discovery, which would necessarily be time consuming, expensive and significantly delay the final resolution of this case. For instance, Plaintiffs' *Monell* claims include allegations that the City had a "policy" to procure false testimony, to use tactics to secure convictions without regard to guilt or innocence, to file false reports, and that it failed to train its officers, discipline officer misconduct, and perpetuated a "code of silence." This is on top of Plaintiffs' so-called "street files" claim, which is the subject of this motion.

2. As explained in the City's Reply in Support of its Motion to Bifurcate Plaintiffs' *Monell* Claims ("Reply") (Dkt. 156), despite Plaintiffs' wide-ranging *Monell* allegations, Plaintiffs have failed to pursue discovery on any of their *Monell* theories as they relate to their individual claims.[1] Accordingly, bifurcation in this case is appropriate. If, however, this Court determines that bifurcation is not appropriate in this case, Plaintiffs should be barred from pursuing *Monell* discovery on their so-called "street files" claim.

3. Federal Rule of Procedure 26(c)(1) authorizes a court to issue a protective order to "protect a party or person from annoyance, embarrassment, oppression, undue burden or expense including…forbidding the disclosure or discovery." Whether to enter a protective order is within the sound discretion of the court, and the predominant question is whether "good cause" exists. *Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003). "Discovery, like all matters of procedure, has ultimate and necessary boundaries," and "discovery of a matter not reasonably calculated to lead to the discovery of admissible evidence is not within the scope of Rule 26(b)(1)." *See Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 351-352 (1978). Parties should not be entitled to expansive discovery based on merely a speculative allegation. *See Central States, Southeast*

---

[1] The City will not repeat its arguments here but incorporates them by reference. *See* Dkt. 156 at 2-4.

2

*and Southwest Areas Pension Fund v. Wast Management of Michigan, Inc.*, 674 F. 3d 630, 637 (7th Cir. 2013). To the contrary, "discovery is not to be used as a fishing expedition." *EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 971 (7th Cir.1996).

4. In this case, Plaintiffs allege the City had a pattern and practice of maintaining "clandestine files," which caused Defendant Officers to "systematically suppress[] exculpatory and/or impeaching material by intentionally secreting discoverable reports, memos and other information in files that were maintained solely at the police department and were not disclosed to the participants of the criminal justice system. As a matter of widespread custom and practice, these clandestine files were withheld from the State's Attorney's Office and from criminal defendants, and they were routinely destroyed at the close of the investigation, rather than being maintained as part of the official file." (*Montanez* Dkt. 105 at ¶92; Serrano Dkt. 90 at ¶178). Plaintiffs allege this practice resulted in the violation of their due process rights pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). Naturally, to succeed on such a claim, at a minimum, Plaintiffs must establish that (1) CPD maintained such a "clandestine" file in the Vargas homicide investigation and (2) that the file contained material exculpatory or impeachment evidence Plaintiffs failed to obtain before their criminal trial.

5. As this Court is undoubtedly aware, this theory of liability originates in CPD's record keeping practices that existed before 1983 when CPD instituted wholesale changes to its record keeping policies and practices. *See generally*, *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988), *Palmer v. City of Chicago*, 755 F. 2d 560 (7th Cir. 1985) ("*Palmer I*") and *Palmer v. City of Chicago*, 806 F. 2d 1316 (7th Cir. 1987) (*"Palmer II"*). In summary, there were no clear guidelines regarding the maintenance of detectives' before CPD changes its practices in 1983. Before 1983, CPD did not require that any notes, memorandum, or the like to include a unique RD

number that pertains to the crime. *See Palmer I*, 755 F. 2d at 566. In *Jones*, the file that contained the detectives' notes was termed a "street file." *Jones*, 8566 F.2d at 991. The homicide investigation underlying this case occurred ten years after CPD overhauled its record keeping policies in 1983.

6. In their Complaints, the only document that Plaintiffs allege they did not obtain during the criminal case were criminal history reports pertaining to Plaintiffs and their co-defendant, Jorge Pacheco. Plaintiffs allege the date stamps on the reports show that Defendant Officers targeted them before having an evidentiary basis to do so. (*Serrano* Dkt. 90 at ¶33; *Montanez* Dkt. 88 at ¶39-41). Plaintiffs further allege that Defendant Officers placed the reports in the "clandestine file" such that Plaintiffs could not discover them during the criminal proceedings. *Id.*

7. Despite making these allegations, neither Plaintiff has produced his criminal defense attorney's file from the time of the criminal trial to establish what documents were or were not produced to them. Plaintiff Montanez was represented by the Cook County Public Defender's Office ("CCPD"), and the CCPD has determined it no longer possesses the file pertaining to this case. Plaintiff Serrano was represented by private counsel. Defendants subpoenaed Serrano's criminal defense counsel, and each of his attorneys has responded that they no longer possess any documents pertaining this case. As such, the parties have no way to determine what documents were or were not produced to Plaintiffs.

8. Critically, however, the Parties can establish, at least to some extent, what CPD documents were produced to Jorge Pacheco, Plaintiffs' co-defendant. Pacheco was also represented by the CCPD, and the CCPD has produced Pacheco's criminal defense attorney's file (the "Pacheco File"). The Pacheco File contains the criminal history reports Plaintiffs' allege were

4

withheld from them. The fact that the Pacheco File contains the very documents Plaintiffs' claim were withheld, necessarily undermines Plaintiffs' claim that the reports were "secreted" in the "clandestine file," particularly where, as here, there is no reason to believe that any of the three co-defendants were treated differently. And, of course, as the City pointed out in its Reply, even if there were some exculpatory document contained in CPD files, based upon Plaintiffs' allegations regarding the roles of the Prosecutor Defendants, there is no reason to believe that those Prosecutor Defendants would have disclosed any such document during criminal discovery.

9. Despite these issues, and, even though the City's Motion to Bifurcate is still pending, the Parties have engaged in multiple 37.2 conferences in an attempt to work towards a compromise regarding the scope of certain discovery requests should the City's motion be denied. During each of those conversations, the City has reiterated and maintained its position that because Plaintiffs have failed to establish the viability of their purported "street file" claim in their underlying case, discovery into the City's alleged practices would be futile. Indeed, without evidence of what documents were produced to their criminal defense attorneys, Plaintiffs cannot even begin to establish that CPD failed to produce *any* document to Plaintiffs. What's more, the fact that the very documents Plaintiffs have identified as being withheld are contained in the Pacheco File provide undisputed evidence that it was not withheld. For these reasons, the City's counsel has explained that Plaintiffs' "street files" claim seems unable to get off the ground.

10. In each of the Parties' 37.2 conference on the subject, Plaintiffs' counsel has been unable to defend the viability of their *Monell* claim. For instance, Plaintiffs' counsel stated that the allegation that the criminal history reports were withheld from Plaintiffs was based upon the CCSAO file which Plaintiffs claimed did not contain the criminal history reports. Plaintiffs' counsel had no response when the City's counsel pointed out that even if the criminal history

5

reports were not in the CCSAO file, as it exists today, the fact that the reports are contained in the Pacheco File establishes that they were not withheld.

11. Similarly, when the City's counsel asked about the relevance of the polygraph files to their "street files" *Monell* theory,[2] Plaintiffs' counsel stated that the polygraph file was not contained in the Defendant Detectives' Investigative File and that there was no detective report documenting the fact that one of the witnesses, Anna Velez, was taken for a polygraph. The City's counsel pointed out that those two factors are irrelevant for *Monell* purposes, since the polygraph files are contained in the Pacheco File. Plaintiffs' counsel had no response. The City also explained that while Plaintiffs may have a valid criticism of Defendant Officers for failing to create a report documenting that Ms. Velez was taken for a polygraph, that criticism does not open the door to "street file" discovery because if the document does not exist, then CPD cannot be at fault for failing to produce it. Again, Plaintiffs' counsel had no response.

12. Plaintiffs' failure to articulate any facts that would support a constitutional violation tethered to their *Monell* "street files" claim, dictates a careful look at the scope of the *Monell* requests sought related to the "street files" claim. This examination illustrates that pursuing this discovery is not proportional to the needs of the case and, therefore, unnecessarily time consuming, expensive and will prolong the final resolution of this case.

13. The crux of the discovery sought can be found in Plaintiffs' Second Set of Requests for Production, No. 1, dated December 28, 2018 ("2nd RFP #1"), attached hereto Ex. A. In an effort to prove that the City maintained "clandestine files" and failed to produce exculpatory evidence in violation of *Brady,* this request seeks "all Documents contained in the investigatory file, the RD numerical sequence file, the area file, the street file, the working file, the investigatory

---

[2] As will be discussed more fully below, Plaintiffs have included requests for all polygraph files in their *Monell* discovery requests.

file folder, the permanent retention file and all other files containing Documents relating to the homicide investigation" for "any homicide investigations conducted in whole or in part between January 1, 1993 and December 31, 1994 by Area 5 detectives which was cleared/closed or is no longer open." The Parties have conducted numerous 37.2 discussions regarding the scope of this request.

14. In response to the City's objections that requesting documents for *any* homicide investigations conducted for a two year period of time would include investigations of homicides that pre-date the two-year time period identified by many years, Plaintiffs agreed to change their request to homicides committed between January 1, 1992 and December 31, 1994, in which the investigation was closed in some manner (at any time), thereby expanding the relevant time period from two to three years. There are approximately 462 homicides that fit within Plaintiffs' revised request. While Plaintiffs have also indicated that they are willing to a sampling methodology that results in a ballpark figure of 200 homicide investigations, Plaintiffs will only agree to this smaller sampling if the City agrees that the sample is "representative" for *Monell* purposes.

15. With respect to the catchall request for "all other files containing Documents," Plaintiffs have proposed to limit this aspect of the request to polygraph, gang crimes and tactical unit documents but only as an initial matter, and reserve the right to request additional documents for individual homicide investigations as Plaintiffs deem appropriate.

16. As to Plaintiffs' offer to accept a sampling methodology, the City will not agree if the offer is contingent upon a stipulation that the sample is "representative" for *Monell* purposes. Nevertheless, regardless of the final number of homicide investigations at play, the discovery process does not end with the production of CPD files. Plaintiffs would still need prove that CPD did not produce certain documents and that those documents constituted material exculpatory or

impeachment evidence. The only meaningful way to determine what investigative materials were produced to criminal defendants would be to conduct discovery in each of the prosecutions that resulted from each of those homicide investigations. Accordingly, in order to draw any conclusions for *Brady* purposes, the companion CCSAO files, CCPD files, and perhaps court files and court transcripts, will need to be gathered in order to evaluate the City's record keeping practices. Additionally, prosecutors and criminal defense attorneys may need to be deposed. A herculean undertaking with no benefit to Plaintiffs in light of their failure to produce their criminal defense attorneys' files. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that if there is no violation of the plaintiff's constitutional rights, "it is inconceivable" that the municipality could be liable pursuant to a *Monell* claim); *see also Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010) (jury's conclusive verdict on the underlying constitutional claim means no *Monell* liability).

17. With respect to Plaintiffs' request for files beyond investigative files, with 472 homicides in play, this, too, would be a herculean task. The City would have to retrieve documents for 472 separate homicides from various locations within CPD. And, if that were not enough, because Plaintiffs are reserving the right to request additional documents, as they see fit, the process could take months and months. Presumably, as Plaintiffs reviewed the 472 homicide files produced, they would identify different documents and request those, a potentially never-ending process.

18. Plaintiffs have had fifteen months to conduct fact discovery. Fact discovery was originally set to close on March 2, 2019. Pursuant to Defendants' motion for an extension, fact discovery is now set to close on June 3, 2019 (Plaintiffs would only agree to a 30-day extension). The depositions of dozens of witnesses have been taken. Despite all of this discovery, Plaintiffs

have failed to establish that any document was withheld from them. Accordingly, embarking on "street file" discovery at the eleventh hour is not proportional to the needs of the case, as it will necessarily be time consuming, expensive and significantly delay the final resolution of this case.

WHEREFORE, Defendant City of Chicago, respectfully requests this Honorable Court forbid Plaintiffs from conducting discovery on their purported "street files" *Monell* claim, specifically upholding the City's objections

Dated: March 15, 2019

Respectfully Submitted,
CITY OF CHICAGO,

By: */s/ Eileen E. Rosen*
One of its Attorneys

Eileen E. Rosen, No. 06217428
Stacy A. Benjamin
Catherine M. Barber
Theresa B. Carney
Austin G. Rahe
Rock Fusco & Connelly, LLC
321 N. Clark St., Suite 2200
Chicago, Illinois 60654
(312) 494-1000
erosen@rfclaw.com