**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARMANDO SERRANO | ) | |
| | ) | Case No. 17 CV 2869 |
| Plaintiff, | ) | |
| | ) | Hon. Manish S. Shah |
| vs. | ) | Magistrate Susan E. Cox |
| | ) | |
| REYNALDO GUEVARA, ERNEST | ) | |
| HALVORSEN, EDWARD MINGEY, | ) | |
| MATTHEW COGHLAN, JOHN DILLON, the | ) | |
| CITY OF CHICAGO, and COOK COUNTY | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

| | | |
|---|---|---|
| JOSE MONTANEZ | ) | |
| | ) | Case No. 17 CV 4560 |
| Plaintiff, | ) | |
| | ) | Hon. Manish S. Shah |
| vs. | ) | Magistrate Susan E. Cox |
| | ) | |
| REYNALDO GUEVARA, ERNEST | ) | |
| HALVORSEN, EDWARD MINGEY, | ) | |
| MATTHEW COGHLAN, JOHN DILLON, the | ) | |
| CITY OF CHICAGO, and COOK COUNTY | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................1

FACTUAL BACKGROUND ..............................................................................2

I.    The Vargas Murder ..................................................................................2

II.   Francisco Vicente Surfaces .....................................................................3

III.  Wilda Vargas's Statements .....................................................................3

IV.   Timothy Rankins's Statements ...............................................................4

V.    Plaintiffs' Criminal Trial ........................................................................5

LEGAL STANDARD ..........................................................................................6

ARGUMENT ........................................................................................................7

I.    Plaintiffs Have Insufficient Evidence To Support Certain Fabrication of Evidence
      Claims (Count I) Against Police Defendants ..........................................7

      A.    Plaintiffs' Fabrication Claims Against All Police Defendants Based On
            Rankins's Statements Fail Because The Statements Were Not Used At Trial .....7

      B.    Wilda Vargas's Statements Were Not Fabricated And Did Not Otherwise Cause
            A Deprivation Of Plaintiffs' Due Process Rights ................................................8

      C.    Defendant Mingey Had No Involvement In Obtaining Vicente's And Wilda
            Vargas's Statements ...........................................................................................10

II.   Plaintiffs Lack Sufficient Evidence To Support Their *Brady* Claims (Count II). ..........11

      A.    Plaintiffs Cannot Recast Their Fabrication Claims As *Brady* Claims ...............12

      B.    Plaintiffs Lack Sufficient Evidence to Establish That Other Exculpatory
            Evidence Pertaining to Rankins Was Either Material or Suppressed ................13

      C.    Plaintiffs Cannot Demonstrate That Police Defendants Suppressed Any
            Evidence, Let Alone Material Evidence, From Wilda, Ana Velez or Frank
            Velez ..................................................................................................................15

ii

**TABLE OF CONTENTS**
**-CONTINUED-**

III.     Plaintiffs' Pretrial Detention Claims (Count III) Are Barred By The Two-Year Statute
Of Limitations .................................................................................................................16

IV.     The Prosecutors' Participation In The Alleged Misconduct Breaks The Chain Of
Causation On Plaintiffs' Malicious Prosecution Claims Against The
Police Defendants .........................................................................................................18

V.      Mingey Is Entitled To Judgment On Plaintiffs' Intentional Infliction Of Emotional
Distress ("IIED") Claims ............................................................................................20

VI.     Plaintiffs Have Failed To Support Their Failure To Intervene Claims (Count V) Against
Defendant Mingey .......................................................................................................20

VII.    Plaintiffs' *Respondeat Superior* And Indemnification Claims Should Be Dismissed To
The Extent The Police Defendants Are Dismissed ......................................................21

VIII.   The Implications Of The Outstanding Motion For Sanctions Against Serrano.............22

CONCLUSION............................................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

<u>Cases:</u>                                                                                     <u>Page</u>

*Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir.2005) ..................................21

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ..........................................6

*Ashafa v. City of Chicago, 146* F.3d 459 (7th Cir. 1993)..............................................16

*Atkins v. City of Chicago*, No. 05 C 6109, 2009 WL 1209032, at *2 (N.D. Ill. May 1, 2009) .....10

*Brady v. Maryland*, 373 U.S. 83, 86, 83 S. Ct. 1194, 1196, 10 L. Ed. 2d 215 (1963..............11

*Boyd v. City of Chicago*, 225 F. Supp. 3d 708, 719 (N.D. Ill. 2016)...............................13

*Cairel v. Alderden*, 821 F.3d 823, 834 (7th Cir. 2016)................................................18

*Carvajal v. Dominguez,* 542 F.3d 561, 566–67 (7th Cir.2008) .........................................11,12, 13

*Colbert v. City of Chicago*, 851 F.3d 649, 655 (7th Cir. 2017),  .....................................19

*Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 344 (7th Cir. 2019) ........................10

*Cooney v. Casaday*, 746 F.Supp.2d 973, 977-78 (N.D. Ill. 2010)...................................20

*Diaz v. Shallbetter*, 984 F.2d 850, 855 (7th Cir. 1993)..................................................16

*Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014) ............................................7, 9,10

*Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010) .......................6

*Hallom v. City of Chicago*, No. 1:18 C 4856, 2019 WL 1762912, at *2 (N.D. Ill. Apr. 22, 2019) 8

*Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005)................................................21

*Harris v. Kuba*, 486 F.3d 1010, 1016-17 (7th Cir. 2007)..............................................12

*Hill v. City of Chicago*, No. 06 C 6772, 2009 WL 174994, at *4 (N.D. Ill. Jan. 26, 2009) ..........14

*Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009) ................................................18

*Kelly v. City of Chicago,* 4 F.3d 509, 511 (7th Cir. 1993)............................................16

## TABLE OF AUTHORITIES
### -CONTINUED-

**Cases:**                                                                                    **Page**

*Kidwell v. Eisenhauer* 679 F.3d 957, 964 (7th Cir. 2012) ..............................................6

*Kirk v. Michael Reese Hospital and Medical Center*, 117 Ill.2d 507, 532 (1987) .......................21

*Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019) .....................................8,17

*Manuel v. City of Joliet* (*Manuel I*), 137 S. Ct 911, 920 (2017) ...................................17

*Manuel v. City of Joliet* (*Manuel II*), 903 F.3d 667, 670 (2018) ..................................17

*Melongo v. Podlasek*, 2019 WL 1254913, at *17 (N.D. Ill. Mar. 19, 2019) ................................8

*Moy v. Cook County*, 159 Ill.2d 519, 524 (1994) .......................................................21

*McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004)....................................6

*Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 915 (N.D. Ill. 2015) ................................14

*Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005)....................................10, 15

*Petty v. City of Chicago.*, 754 F.3d 416, 423 (7th Cir. 20014) .........................................9

*Regains v. City of Chicago*, 918 F.3d 529, 533 (7th Cir. 2019) .......................................16

*Rivera v. Lake Count*y., 974 F. Supp. 2d 1179, 1191 (N.D. Ill. 2013) .................................18

*Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015)..............................................12

*Sneed v. Rybicki*, 146 F.3d 478, 481 (7th Cir. 1998) .................................................18

*Swetlik v. Crawford*, 738 F.3d 818, 829 (7th Cir. 2013)................................................6

*Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir.2010) .......................20

*United States v. Parks,* 100 F.3d 1300, 1307 (7th Cir.1996).........................................16

*U.S. v. Price,* 418 F.3d 771, 785 (7th Cir.2005) ..................................................14,15

**TABLE OF AUTHORITIES**
**-CONTINUED**

*U.S. v. Roberts,* 534 F.3d 560, 572 (7th Cir.2008) ........................................................................15

*U.S. v. Warren,* 454 F.3d 752, 759 (7th Cir.2006)........................................................................14

*Wallace v. Kato*, 549 U.S. 384, 388 (2007) ................................................................16

*Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012) ........................................................7

**<u>Statutes:</u>**

<u>**Page**</u>

42 U.S.C. § 1983........................................................................................................8, 16

Fed. R. Civ. P 56........................................................................................................1

## INTRODUCTION

These lawsuits arise from Plaintiffs' arrests, prosecutions and convictions for the brutal murder of Rodrigo Vargas in the early morning hours of February 5, 1993 in Chicago's Humboldt Park neighborhood. Plaintiffs allege Defendants Reynaldo Guevara, Edward Mingey, and Ernest Halvorsen ("Police Defendants") violated their constitutional rights by withholding and fabricating evidence, and manipulating and coercing three witnesses – Francisco Vicente, Timothy Rankins, and Wilda Vargas – to provide inculpatory statements against Plaintiffs. But after extensive discovery, Plaintiffs have been unable to develop credible evidence supporting many of their claims against Police Defendants.

Accordingly, Defendant Mingey seeks partial summary judgment on Plaintiffs' federal fabrication of evidence claims (Count I), *Brady* claims (Count II), unlawful pretrial detention claims (Count III), failure to intervene claims (Count V) and Plaintiffs' state law malicious prosecution and IIED claims. Defendants Halvorsen and Guevara move for partial summary judgment on Plaintiffs' federal fabrication of evidence claims as they relate to Timothy Rankins and Wilda Vargas (Count I), *Brady* claims (Count II), unlawful pretrial detention claims (Count III), and state law malicious prosecution claims. In further support of this memorandum of law, Police Defendants rely on their Rule 56.1 Statement of Material Facts and the Cook County Defendants' Rule 56.1 Statement of Material Facts.[1]

---

[1] "CCSOF ¶ ___" refers to the Cook County Defendants' Rule 56.1 Statement of Material Facts and "SOF ¶ ____" refers to the Police Defendants' Rule 56.1 Statement of Material Facts.

## FACTUAL BACKGROUND

### I.     The Vargas Murder

Around 5:30 a.m. on February 5, 1993, Rodrigo Vargas was shot and killed in his parked van outside of his family home located at 1838 N. Springfield Avenue, Chicago, IL. (SOF ¶ 1). Chicago police personnel processed the crime scene and canvassed the neighborhood for witnesses. (SOF ¶¶ 5,6). Ana Velez, a neighbor who lived two houses down the street from the Vargas residence, advised Detectives Richard Schak and Neal Jack that she saw Vargas's blue van running outside his house at about 5:30 a.m. (the usual time that Vargas got up in the morning) and moments later heard gun shots. (SOF ¶ 6). About 7:10 a.m., she saw that Vargas's van was still running and had a crack in the driver's side window. (*Id*.). At that point, Velez went outside and discovered Vargas lying face down inside his van, covered in blood. (*Id*.). Ana's son, Frank Velez, was also interviewed. He heard shots but quickly went back to sleep. (SOF ¶ 6). Two other neighbors also heard the gun shots and noticed a light brown or brown car driving away. (SOF ¶¶ 8, 9). The next day, February 6, 1993, Defendant Detectives Guevara and Halvorsen were assigned to investigate the Vargas homicide. (SOF ¶ 10).

No leads were immediately developed, but at some point prior to May 24, 1993, Defendant Guevara was informed by an unknown source that "Pistol Pete" and "Mando" were the offenders in the Vargas murder. (SOF ¶ 12). Thereafter, Defendant Guevara informed his partner, Defendant Halvorsen about the nicknames the source provided. (SOF ¶ 14). "Pistol Pete" was a nickname for Jose Montanez and "Mando" was a nickname for Armando Serrano, and both were members of the Imperial Gangsters street gang. (SOF ¶ 12).

## II.     Francisco Vicente Surfaces

On May 14, 1993, another Imperial Gangster named Francisco Vicente was arrested on unrelated armed and simple robbery charges. (CCSOF ¶ 20). Shortly after his arrest, Vicente provided a felony review prosecutor a handwritten statement implicating one Robert Bouto in the May 1993 murder of Salvador Ruvalcaba. (CCSOF ¶ 21). On May 19, 1993, Vicente testified before a Grand Jury about the Ruvalcaba murder, after which Bouto was charged. (CCSOF ¶ 22).

On May 31, 1993, Bouto's criminal defense attorney visited Vicente in the Cook County jail during which he gave Vicente money and offered to represent him in his pending robbery cases if Vicente would recant his testimony against Bouto. (CCSOF ¶ 25). Upon learning of the attempted bribe, Defendant Halvorsen arranged a meeting with Vicente. (CCSOF ¶ 26). On June 2, 1993, Defendant Halvorsen met with Vicente and asked if he knew anyone nicknamed "Pistol Pete" as he was investigating a "Pistol Pete" for the Vargas murder. (CCSOF ¶¶ 35, 36). Vicente responded, "that's Big Pistol Pete," referring to plaintiff Montanez. (CCSOF ¶ 36). Vicente then provided a lengthy statement to the effect that, later on the morning of the murder, Plaintiffs and a third man, Jorge Pacheco, discussed, in his presence, that Plaintiff Serrano had just shot and killed Vargas during their botched attempt to rob him outside his home. (*Id.*).

## III.     Wilda Vargas's Statements

As part of their investigation, Defendants Halvorsen and Guevara spoke with Rodrigo Vargas's widow, Wilda Vargas ("Wilda"). (SOF ¶ 16). Wilda informed Det. Guevara that on February 4, 1993, the evening before her husband's murder, the Vargas family stopped at a local gas station on their way home from the bank. (*Id.*). Wilda explained that a tan car containing three men parked in front of the Vargas family van at the gas station. (SOF ¶ 17). The driver of the tan car entered the gas station store and stood behind Rodrigo who had a roll of money on

3

him. After Rodrigo exited the store, the tan car blocked Vargas from leaving the gas station and an argument ensued between Rodrigo and the men in the tan car. The tan car then closely followed the Vargas family van back to Vargas's home on Springfield Avenue. (*Id*.).

After Wilda told Defendants Halvorsen and Guevara about the gas station encounter, they drove her to the general area where Plaintiff Montanez's car was located and instructed her to notify them if she saw the car from the gas station. (SOF ¶ 19). Wilda recognized Montanez's tan Buick as the car she saw at the gas station and inquired about the bullet hole on the car. Defendant Guevara told her the bullet hole might match the weapon that was used to kill Rodrigo Vargas. (*Id*.). Wilda later identified the driver of the tan car from the gas station incident as Plaintiff Montanez and the front seat passenger as Plaintiff Serrano in a live-lineup and review of gang book photos. (SOF ¶¶ 22-25).

## IV.    Timothy Rankins's Statements

On June 10, 1993, Timothy Rankins was arrested by 25th District police officers on armed robbery charges unrelated to the Vargas investigation. (SOF ¶ 26). During a June 11, 1993 debriefing about his knowledge of an unrelated homicide, Rankins told Defendant Mingey he was present when Montanez, Serrano, and Pacheco tried to rob and then shot Vargas. Rankins also provided similar statements inculpating Montanez, Serrano, and Pacheco to Defendants Guevara and Halvorsen. (*Id*.).

Defendant Mingey does not recall if he created notes during his meeting with Rankins but at most he would have recorded the nicknames of the offenders that Rankins described, and provided that information to Defendants Guevara and Halvorsen. (SOF ¶ 27). Rankins later informed police and a prosecutor from the Cook County State's Attorney's ("CCSAO") Felony Review Unit that he was with "Shorty Folks" and his girlfriend Sabrina when he met Plaintiffs in

4

a park before he accompanied them to the scene of the Vargas murder. Rankins provided statements to a Grand Jury on June 15, 1993. (SOF ¶ 28).

While Rankins was in custody awaiting his criminal trial on armed robbery charges, Plaintiff Montanez spoke and met with Rankins. (SOF ¶ 29). Thereafter, Rankins provided Plaintiffs with two recant affidavits. (SOF ¶¶ 29, 30). The affidavits claimed Police Defendants coerced him to falsely implicate Plaintiffs. (*Id*.). After providing the recants, Rankins traveled to Puerto Rico with Plaintiff Montanez's father and stayed with Montanez's extended family in order to avoid being called as a witness at Plaintiffs criminal trial. (SOF ¶ 33). Rankins later wrote Montanez and thanked him for not killing him while inside the Cook County jail. (SOF ¶ 34).

## V.     Plaintiffs' Criminal Trial.

Rankins's handwritten recantations were provided to CCSAO Defendant Matthew Coghlan before Plaintiffs' October 1994 bench trial. (SOF ¶¶ 36, 39). Rankins never testified nor were his statements introduced at trial. (SOF ¶ 40). But Vicente did testify that he was present when his fellow Imperial Gangsters discussed committing the crimes against Vargas. (Dkt. 90, Serrano's Amend. Cmplt. ¶ 70; Dkt, 89, Montanez's Cor. Amend. Cmplt. ¶¶82, 84). Wilda also testified that she saw Plaintiffs in a tan car at the gas station on the evening before her husband's death, and identified Montanez's vehicle. (SOF ¶ 41). But as Plaintiffs readily admit, they "were convicted *solely* on the 'snitch' testimony of Francisco Vicente." (Dkt. 90, Serrano's Amend. Cmplt. ¶ 70;  Dkt, 89, Montanez's Cor. Amend. Cmplt. ¶¶82, 84).

On October 21, 1994, Plaintiffs were convicted of the Vargas murder at a bench trial. (SOF ¶ 1). In 2004, Vicente recanted his testimony against Plaintiffs to representatives of Northwestern University's Medill journalism class and contended he was coerced to lie against

Plaintiffs by Defendants Guevara and Halvorsen.[2] (Dkt. 90, Serrano's Amend. Cmplt. ¶ 70). On June 7, 2016, Plaintiffs' convictions were reversed and remanded by the Illinois Appellate Court, and on July 20, 2016, the CCSAO vacated Plaintiffs' convictions and *nolle presequi'd* the murder charges. (SOF ¶ 1).

## LEGAL STANDARD

Summary judgment is appropriate when the discovery record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer* 679 F.3d 957, 964 (7th Cir. 2012). While the court must construe the facts in the light most favorable to the non-moving party and draw all reasonable inferences in his favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), "that duty does not extend to drawing inferences that are supported only by speculation or conjecture." *Swetlik v. Crawford*, 738 F.3d 818, 829 (7th Cir. 2013); *McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004) (1986). In the end, summary judgment is the "put up or shut up moment in litigation, by which we mean that the non-moving party is required to marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010).

---

[2] The circumstances that led to Vicente's recantation are set forth in detail in Defendants' motion for spoliation sanctions (Serrano Dkt. 198) filed August 12, 2019.

**ARGUMENT**

I.      **Plaintiffs Have Insufficient Evidence To Support Certain Fabrication of Evidence Claims (Count I) Against Police Defendants.**

      A.      **Plaintiffs' Fabrication Claims Against All Police Defendants Based On Rankins's Statements Fail Because The Statements Were Not Used At Trial.**

Plaintiffs claim they were "deprived…of…[their] constitutional right to a fair trial, in violation of the Fourteenth Amendment by fabricating…Rankins' statements." (Dkt. 90, Serrano's Amend. Cmplt. ¶ 136;  Dkt, 89, Montanez's Cor. Amend. Cmplt. ¶ 122). But even if Police Defendants had somehow caused Rankins to fabricate evidence, which Police Defendants deny,[3] Plaintiffs cannot support their 14th Amendment fair trial claims as they relate to Rankins's statements because Rankins never testified at Plaintiffs' criminal trial. To violate due process, the allegedly fabricated evidence must have "involved not merely the fabrication, but the introduction of the fabricated evidence at the criminal defendant's trial," because "if the evidence hadn't been used against the defendant, he would not have been harmed by it, and without a harm there is … no tort."  *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014) ("*Fields II*"); *see also Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012). ("[I]f an officer []fabricates evidence and puts that fabricated evidence in a drawer, making no further use of it, then the officer has not violated due process[.]"). Plaintiffs' due process fabrication claims fail to the extent they are based upon Rankins's statements because Rankins did not testify at Plaintiffs' criminal trial nor were his statements substantively introduced at their trial. (SOF ¶40).

---

[3] Rankins recanted his testimony inculpating Plaintiffs in the Vargas murder, but only after Plaintiff Montanez and his family obtained the recantation by not killing Rankins while they were in jail and offering him protection during Rankins's incarceration. What is more, Plaintiff Montanez's family hid Rankins at their family home in Puerto Rico to prevent him from testifying at trial.  These facts are recited at paragraphs 29-34 of Police Defendants' Rule 56.1 motion.

Any contention that Rankins's grand jury testimony supports Plaintiffs' due process claims because it caused their pretrial detention and resulting "loss of liberty" also fails. In *Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019), the court held "that all § 1983 claims for wrongful pretrial detention—whether based on fabricated evidence or some other defect—sound in the Fourth Amendment." The court squarely determined that the injury of wrongful pretrial detention based on fabricated evidence may not be remedied in a §1983 suit under the due process clause. *Id.*; s*ee also Melongo v. Podlasek*, 2019 WL 1254913, at *17 (N.D. Ill. Mar. 19, 2019) (due process claim based on fabricated evidence that contributed only to plaintiff's indictment and pretrial detention dismissed on summary judgment); *Hallom v. City of Chicago*, No. 1:18 C 4856, 2019 WL 1762912, at *2 (N.D. Ill. Apr. 22, 2019) (14th Amendment fabrication of evidence claim dismissed where fabricated evidence was used only to detain plaintiff before criminal trial). As there is no stand-alone due process claim for pretrial detention based on fabricated evidence, the Court should grant Police Defendants summary judgment on Plaintiffs' 14th Amendment due process claims for pre-trial "loss of liberty," to the extent they are based on Rankins's allegedly fabricated statements.

**B.    Wilda Vargas's Statements Were Not Fabricated And Did Not Otherwise Cause A Deprivation Of Plaintiffs' Due Process Rights.**

Plaintiffs contend "Defendants fabricated, coerced, manipulated and/or solicited false [trial] testimony from…Wilda Vargas implicating Plaintiff[s] in the crimes that they knew [Plaintiffs] did not commit," in violation of Plaintiffs' right to a fair trial.  (Dkt. 90, Serrano's Amend. Cmplt. ¶ 137;  Dkt, 89, Montanez's Cor. Amend. Cmplt. ¶ 123). Specifically, Plaintiffs contend Police Defendants coerced Wilda to fabricate trial testimony about the February 4th gas station encounter with Plaintiffs, to falsely identify both Plaintiffs, and to identify Montanez's car as having been at the gas station, by falsely telling her that a bullet hole in the back of

8

Montanez's vehicle matched the gun that was used to kill her husband. (Dkt. 90, Serrano's Amend. Cmplt. ¶¶ 31-37; Dkt, 89, Montanez's Cor. Amend. Cmplt. ¶¶ 51-58).

In *Fields II*, the court explained there is a critical difference between coercing witnesses to testify and fabricating their testimony. 740 F.3d at 1110 ("Coerced testimony is testimony that a witness is forced by improper means to give; the testimony may be true or false. Fabricated testimony is testimony that is made up; it is invariably false. False testimony is the equivalent; it is testimony known to be untrue by the witness and by whoever cajoled or coerced the witness to give it."). In *Petty v. City of Chicago,* plaintiff alleged defendant officers coerced a witness into giving false evidence by threatening him with jail time if he did not cooperate, holding him against his will for over 13 hours, badgering him, and pressuring him to identify plaintiff as an assailant. 754 F.3d 416, 423 (7th Cir. 2014). Yet, there was no allegation that the officers knew the evidence they coerced was false. *Id.* As a result, the court concluded Petty's claim was "a 'coercion' case for which there is no cognizable due process claim, as opposed to an 'evidence fabrication' case where there is a cognizable claim." *Id.* at 422-23.

Similarly here, Plaintiffs have no evidence that Police Defendants knew that Wilda's description of the gas station encounter or identification of Plaintiff Montanez's car at trial was allegedly false. To the contrary, Wilda testified at her deposition that Plaintiffs argued with her husband at the gas station, then followed her family's blue van home, and yelled and shouted expletives at her husband, who was found dead in his van the following morning. (SOF ¶ 24). Wilda further testified that the car she identified to Defendants Guevara and Halvorsen was the same car from the gas station encounter. (SOF ¶ 21).[4] And Wilda testified that Defendants

---

[4] There is no dispute that the tan car Wilda identified belonged to Montanez. (SOF ¶ 21).

Guevara and Halvorsen *did not* coerce or force her to identify Plaintiff Serrano, Plaintiff Montanez or Plaintiff Montanez's vehicle. (SOF ¶ 24).

Finally, Wilda undeniably had a clear view of the car at the gas station and she testified in her deposition that she initially identified Montanez's car *before* Guevara and Halvorsen gave her any ballistics information, false or otherwise. (SOF ¶¶ 17, 20). As a result, even accepting for purposes of this motion that Guevara and Halvorsen's used false information to solidify her identification, it does not support an inference that they knew Wilda's identifications were fabricated. *See Fields II*, 740 F.3d at 1110. Plaintiffs cannot establish a due process claim related to Wilda as no reasonable jury could conclude that Defendants Guevara and Halvorsen manufactured evidence they knew to be false. *See Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 344 (7th Cir. 2019) (fabrication claim dismissed when there was no proof that defendant caused witness to provide a statement that defendant "knew—with certainty—was false").[5]

### C. Defendant Mingey Had No Involvement In Obtaining Vicente's And Wilda Vargas's Statements.

Personal involvement in an alleged constitutional deprivation is a predicate for §1983 liability. *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (the individual defendant must have caused or participated in a constitutional deprivation); *Atkins v. City of Chicago*, No. 05 C 6109, 2009 WL 1209032, at *2 (N.D. Ill. May 1, 2009) (if there is no personal involvement there is no predicate for a Section 1983 claim). Here, there is no evidence that Defendant Mingey was involved in the alleged coercion and fabrication of Francisco Vicente's testimony or in obtaining Wilda's statements. (SOF ¶¶ 43-46). There is no evidence that Mingey was present for any of the meetings with Vicente at the CCSAO, where any coercion allegedly occurred. (*Id.*).

---

[5] Additionally, Plaintiffs' claim that Wilda's allegedly fabricated statements contributed to a pretrial loss of liberty also fails because, as explained in Section I (A), there is no stand-alone 14th Amendment due process claim for pretrial detention based on fabricated evidence.

And there is no evidence that Mingey had any role in obtaining Wilda's statements and testimony. (*Id.*). Because Plaintiffs lack any evidence that Mingey was involved in coercing or fabricating Vicente's and Wilda's statements, Mingey is entitled to summary judgment on Plaintiffs' due process fabrication claims.

## II.     Plaintiffs Lack Sufficient Evidence To Support Their *Brady* [6] Claims (Count II).

To support their *Brady* claims, Plaintiffs must prove three elements: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or because it was impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) the evidence must have been material, meaning that if it had been disclosed, there is a reasonable probability the proceeding would have resolved differently. *Carvajal v. Dominguez,* 542 F.3d 561, 566–67 (7th Cir.2008). The materiality element is often referred to as "prejudice." *Id.* at 566. Here, Plaintiffs cannot identify any specific existing evidence that was material to Plaintiffs' criminal trial which was suppressed by Police Defendants.  Lacking that evidence, Plaintiffs have attempted to recast their fabrication of evidence claims as violations of *Brady*, which is prohibited under well-established law. (SOF ¶ 47). Accordingly, and as demonstrated below, judgment should be granted to Police Defendants on Plaintiffs' *Brady* claims.[7]

---

[6] *Brady v. Maryland*, 373 U.S. 83, 86, 83 S. Ct. 1194, 1196, 10 L. Ed. 2d 215 (1963).
[7] Critically, Plaintiffs do not have a copy of their criminal defense attorneys' files, so they cannot identify a single document that was ever in the possession of Police Defendants that was not provided to their attorneys. Plaintiffs initially alleged that their arrest history sheets, which were stamped as having been requested on May 24, 1993, before they were allegedly suspects, were suppressed. (Dkt. 90, Serrano's Amend. Cmplt. ¶¶ 33; Dkt. 89, Montanez's Cor. Amend. Cmplt. ¶¶ 39- 41). However, those same criminal history sheets were found in the files of the attorney for their co-defendant, Jorge Pacheco, during discovery.  (SOF ¶¶ 13, 37). Notably, the same prosecutor tried the case against Plaintiffs and Pacheco at the same time and before the same judge. (SOF ¶ 36; CCSOF ¶ 80). As a result, Plaintiffs have apparently abandoned any *Brady* claims relating to their arrest history sheets, as they are not mentioned in Plaintiffs' answers to contention interrogatories addressed to their *Brady* claims. Nevertheless, Plaintiffs have no basis to argue their criminal histories were not produced before trial. Indeed, Serrano's criminal

11

A.    **Plaintiffs Cannot Recast Their Fabrication Claims As *Brady* Claims.**

Plaintiffs claim Police Defendants "withheld, concealed, or intentionally omitted documentation of exculpatory evidence" relating to obtaining Rankins's, Wilda's, and Vicente's allegedly fabricated statements, "such as the tactics they had used to cause" them "to adopt a false story." (SOF ¶ 47). But those allegations, as this Court noted in its ruling on the motion to dismiss, do not support viable *Brady* claims. (Dkt. 88, Opinion and Order, pp. 21-22). "[W]ithholding the truth," in the form of detectives' accounts of interviews, is not suppression of evidence for purposes of *Brady*, and the Seventh Circuit has refused to extend *Brady* to encompass the theory that a police officer "suppresses" evidence by giving the prosecution a false account of an interview. *See Carvajal*, 542 F.3d at 567 ; *Harris v. Kuba*, 486 F.3d 1010, 1016-17 (7th Cir. 2007). As the Seventh Circuit explained in *Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015), reh'g denied (Feb. 26, 2015):

> In the end, [plaintiff] seeks to charge the officers with a *Brady* violation for keeping quiet about their wrongdoing [fabricating evidence], not for failing to disclose any existing piece of *evidence* to the prosecution. But our case law makes clear that *Brady* does not require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations to the prosecution.

Against that backdrop, any failure to disclose the circumstances surrounding Rankins's, Wilda's, and Vicente's statements to prosecutors fails to support Plaintiffs' *Brady* claims.

---

defense attorney testified that he likely had *more* documents in his possession than did Pacheco's attorney at the time of trial. (SOF ¶ 38).

**B.** **Plaintiffs Lack Sufficient Evidence to Establish That Other Exculpatory Evidence Pertaining to Rankins Was Either Material or Suppressed.**

Plaintiffs claim Police Defendants withheld "exculpatory information regarding Rankins which would have revealed Plaintiff[s'] innocence and exposed Rankins's account as a lie fabricated by Defendants." (SOF ¶ 48). The specific evidence that Plaintiffs identified as *Brady* material included "Rankins's activities selling drugs for Defendant Guevara, the identity of two individuals ('Shorty Folks' and 'Sabrina') [who allegedly had exculpatory information about the Vargas murder]… and Defendant Mingey's notes from his purported communications with Rankins on or about June 10, 1993." (*Id.*). But this allegedly exculpatory information was not "suppressed" under *Brady* as the information was readily available to Plaintiffs and their attorneys through reasonable diligence because Plaintiffs had unfettered access to Rankins—far greater access than Defendants had—before their criminal trials.

"Evidence is 'suppressed' when (1) the prosecution failed to disclose the evidence in time for the defendant to make use of it, and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence." *Carvajal,* 542 F.3d at 567. The law in this circuit is clear that it is a criminal defendant's "responsibility to probe the witnesses and investigate their versions of the relevant events." *Id.* Likewise, "*Brady* does not require the government to gather information or conduct an investigation on the defendant's behalf." *Boyd v. City of Chicago*, 225 F. Supp. 3d 708, 719 (N.D. Ill. 2016).

Ironically, the only suppression that occurred in regard to Rankins was perpetrated by Plaintiffs, not Police Defendants. Plaintiffs, through their investigator Julio Lebron, and Plaintiff Montanez's family members, obtained Rankins's recantation and then hid him in Puerto Rico at the Montanez family residence so the State could not secure his testimony at Plaintiffs' criminal trial. (SOF ¶ 29-34). Rankins's recantations specifically outlined his allegations of police

13

coercion and were provided to prosecutors before Plaintiffs' criminal trial. (SOF ¶ 32, 39).

Rankins was available to and working with Plaintiffs and their private investigator to recant

before Plaintiffs' trial, he provided recants to the state before the criminal trial, he was secreted

away in Puerto Rico by Plaintiffs to evade testifying, and he never testified at Plaintiffs' criminal

trial. As a result, any information about Rankins allegedly selling drugs for Defendant Guevara,

the true identities of Shorty Folks and Sabrina, [8] and anything that occurred during Rankins's

meeting with Mingey, was available to Plaintiffs through the exercise of reasonable diligence

and thus, was not suppressed under *Brady*. *See Patrick v. City of Chicago*, 103 F. Supp. 3d 907,

915 (N.D. Ill. 2015) (plaintiff could not show suppression under *Brady* when "the facts as

alleged in the complaint leave no doubt that the defense not only had access to the identities of

these witnesses but was aware of their roles in the case").

Further, there is no evidence that Mingey ever created notes of his interview with

Rankins. When "there is no proof of a document's existence, governmental officials cannot be

held liable under *Brady*." *Hill v. City of Chicago*, No. 06 C 6772, 2009 WL 174994, at *4 (N.D.

Ill. Jan. 26, 2009). Mingey testified that, at best, he may have scribbled down nicknames of the

perpetrators who Rankins described but those nicknames were already set forth in the police

reports regarding Rankins. (SOF ¶ 27). Plaintiffs cannot prove the existence of any notes let

alone that the notes contained exculpatory information. *See U.S. v. Warren,* 454 F.3d 752, 759

(7th Cir.2006) (no *Brady* violation where defendant was "unable to point to any specific

evidence, exculpatory or otherwise, withheld by the government."); *U.S. v. Price,* 418 F.3d 771,

---

[8] To be clear, both "Shorty Folks" and Sabrina's names appear in police reports that were provided to
Plaintiffs before trial. (SOF ¶ 28). While Plaintiffs contend their true identities were withheld, Plaintiffs
were in control of Rankins and could have easily garnered more information about these individuals from
Rankins before trial.

785 (7th Cir.2005) (no *Brady* violation where no document existed corroborating defendant's claim).

Similarly, there is no evidence supporting a genuine issue of material fact for trial that Defendants Mingey or Halvorsen were involved in withholding information about the allegations that Rankins was selling drugs for Guevara. *Pepper,* 430 F.3d at 810 (the individual defendant must have caused or participated in a constitutional deprivation). Therefore, Plaintiffs' *Brady* claims against Police Defendants based on withholding allegedly exculpatory evidence relating to Rankins must fail.

### C. Plaintiffs Cannot Demonstrate That Police Defendants Suppressed Any Evidence, Let Alone Material Evidence, From Wilda, Ana Velez or Frank Velez.

To present a viable *Brady* claim, Plaintiffs must identify specific evidence that was suppressed and explain how it was material. Plaintiffs cannot support a *Brady* claim with mere speculation. *See U.S. v. Roberts,* 534 F.3d 560, 572 (7th Cir.2008) ("defendant must provide some evidence other than mere speculation or conjecture that evidence was exculpatory and suppressed by the Government") (citation omitted). Plaintiffs allege that Police Defendants withheld and destroyed their alleged "street files" pertaining to the Vargas murder, including documentation of an interview and polygraph with witness Ana Velez and documentation of an alternate suspect, Frank Velez (Ana's son). (SOF ¶¶ 6, 7, 11) But Plaintiffs lack any evidence that "street files" ever existed relating to the Vargas murder, let alone any information about who created the alleged "street files," and whether the "street files" contained exculpatory information. It is undisputed that both Ana and Frank Velez's names were included in police reports, and Plaintiffs' contention that Police Defendants purposely withheld notes containing material information from their interviews with both Frank and Ana Velez is nothing more than

speculation. (SOF ¶ 49). *See United States v. Parks,* 100 F.3d 1300, 1307 (7th Cir.1996)

("speculation is not enough to establish that the Government has hidden evidence").

Plaintiffs also allege Police Defendants "withheld from Plaintiff[s'] defense their

documentation of showing Wilda Vargas gang photo books, as well as her exculpatory

identification of two individuals from those gang photo books as the people she had actually seen

during the gas station encounter." (SOF ¶ 50). But Wilda explained that she picked out the same

two people from the gas station incident (Plaintiffs Serrano and Montanez) when she was asked

by Defendant Guevara to review certain gang photo books to determine whether she could

identify the suspects. (SOF ¶¶ 24, 25). There is no evidence that Police Defendants withheld any

material information from Plaintiffs in violation of *Brady*.

## III.     Plaintiffs' Pretrial Detention Claims (Count III) Are Barred By The Two-Year Statute Of Limitations.

The statute of limitations for §1983 actions is governed by state law. *Regains v. City of*

*Chicago*, 918 F.3d 529, 533 (7th Cir. 2019). Here, it is beyond dispute that the statute of

limitations on Plaintiffs' pretrial detention claims is two years from accrual. *Ashafa v. City of*

*Chicago, et al.*, 146 F.3d 459, 461 (7th Cir. 1998) ('[t]his circuit has consistently held that the

appropriate statute of limitations for § 1983 cases filed in Illinois is two years"). But federal law

determines when the claim accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  "Section 1983

claims 'accrue when the plaintiff knows or should know that his or her constitutional rights have

been violated.'" *Kelly v. City of Chicago,* 4 F.3d 509, 511 (7th Cir. 1993) (internal citations

omitted); *see also Diaz v. Shallbetter*, 984 F.2d 850, 855 (7th Cir. 1993) ("*every* constitutional

tort actionable under § 1983 is treated as a personal injury, with the claim accruing when the

injury is inflicted." (emphasis in original)).

In *Manuel v. City of Joliet* (*Manuel I*) the Supreme Court held that "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." 137 S. Ct. 911, 920 (2017). The Seventh Circuit later explained in the *Manuel* litigation that "[b]ecause the wrong is the detention rather than the existence of criminal charges, the period of limitations also should depend on the dates of the detention." *Manuel v. City of Joliet* (*Manuel II*), 903 F.3d 667, 670 (2018) *(Manuel II)*. In *Manuel II*, the Court further stated*:* "The problem is the wrongful custody. There is no such thing as a constitutional right not to be prosecuted without probable cause. But there is a constitutional right not to be held in custody without probable cause." *Id*. Accordingly, *Manual II* held that plaintiff's pretrial detention claim accrued when pre-trial custody concluded, and specifically rejected the argument that a pretrial detention claim is analogous to common law malicious prosecution such that it would not accrue until plaintiff prevails in the criminal case. *Id*. In *Lewis v. City of Chicago*, 914 F.3d at 479, the Seventh Circuit recently confirmed this approach to a 4th Amendment pretrial detention claim:

> "the constitutional right in question is the 'right not to be held in custody without probable cause,' the violation of which gives rise to a 'plain-vanilla Fourth Amendment' claim under § 1983 because the essential constitutional wrong is the 'absence of probable cause that would justify the detention.' In other words, the Fourth Amendment, not the Due Process Clause, is the source of the right in a § 1983 claim for unlawful pretrial detention, whether before or after the initiation of formal legal process." 914 F.3d at 479 (internal citations removed).

Under the guidance of both *Manuel* decisions and more recently, *Lewis*, Plaintiffs' pretrial detention claims are untimely because they accrued, at the latest, when their pretrial detention ended upon their convictions in 1994. (SOF ¶ 42). *See Black's Law Dictionary*, (10th ed. 2014) (Pretrial detention is the holding of a defendant before trial on criminal charges). Plaintiffs had two years from their 1994 convictions to file their 4th Amendment pretrial detention claims. (SOF ¶ 42). As Plaintiffs each filed in 2017, their claims for unreasonable pretrial detention (Count III) are necessarily time barred. (Serrano Dkt. 1; Montanez Dkt. 1).

17

**IV.    The Prosecutors' Participation In The Alleged Misconduct Breaks The Chain Of Causation On Plaintiffs' Malicious Prosecution Claims Against The Police Defendants.[9]**

To prevail on a claim for malicious prosecution under Illinois law, Plaintiffs must prove: (1) commencement or continuation of an original proceeding; (2) termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages. *Cairel v. Alderden*, 821 F.3d 823, 834 (7th Cir. 2016). "The absence of any one of these elements bars a plaintiff from pursuing the claim." *Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009) (internal citations removed).

Plaintiffs must also prove that some action by Police Defendants caused them to be maliciously prosecuted. *Sneed v. Rybicki*, 146 F.3d 478, 481 (7th Cir. 1998) (plaintiff "must allege some action that supports the conclusion that a malicious prosecution occurred" by the police officer defendants). Here, the prosecutors' alleged involvement in the misconduct that led to the filing of criminal charges against Plaintiffs breaks the chain of causation necessary to hold Police Defendants liable for the prosecutors' decision to seek charges.

Plaintiffs allege that, "prior to the initiation of probable cause to believe Plaintiff[s] had committed a crime, and while acting in [their] investigatory capacities," the prosecutors participated in the "conceal[ing] and fabricat[ion of] evidence, manipulate[ion of] witness testimony, and malicious prosecut[ion of] Plaintiff[s] for Rodrigo Vargas's murder". (Dkt. 89, Montanez Amend. Cmplt. ¶ 19; see also Dkt. 90, Serrano Amend. Cmplt. ¶ 2). That allegation breaks the chain of causation required to support a claim for malicious prosecution against Police Defendants. *See Rivera v. Lake County*, 974 F. Supp. 2d 1179, 1191 (N.D. Ill. 2013) (the

---

[9] Serrano's state law malicious prosecution claim is identified as Count VII.  (Dkt. 90, Serrano Amnd. Cmplt. ¶¶ 196-201). Montanez's state law malicious prosecution claim is identified as Count VIII. (Dkt. 89, Montanez Amnd. Cmplt. ¶¶ 165-171).

prosecutor's independent decision to indict "breaks the chain of causation linking the police to the wrongful prosecution.") (internal citations removed).

In *Colbert v. City of Chicago*, 851 F.3d 649, 655 (7th Cir. 2017), the Seventh Circuit stated, "the State's Attorney, not the police, prosecutes a criminal action. It is conceivable that a wrongful arrest could be the first step towards a malicious prosecution. However, *the chain of causation is broken by an indictment*, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements by the officers to the prosecutor." (emphasis in the original). This Court previously explained that if Police Defendants officers did not pressure or influence the SAO Defendants, and the SAO Defendants were aware of the fabrication of evidence, then the chain of causation on the malicious prosecution claim is broken vis-à-vis Police Defendants. *See* Dkt. 88, p. 26 ("Here, the chain of causation is broken by the alleged knowing involvement of the prosecutors in the officers' misconduct.").

Thereafter, Plaintiffs amended their complaints and alleged, in the alternative, that Police Defendants did not inform the prosecutors of their misconduct prior to the initiation of criminal charges. (Dkt. 89, Montanez Amend. Cmplt. ¶ 43,62; Dkt. 90, Serrano Amend. Cmplt. ¶¶ 196-201).[10] But when specifically asked for evidence supporting that allegation in contention interrogatories, Plaintiffs did not identify any evidence of undue influence by the police officers. (SOF ¶¶ 51, 52). Moreover, plaintiffs' alternative claim that the SAO Defendants had no knowledge of the fabricated evidence is rebutted by their own interrogatory answers to the

---

[10] Plaintiff Montanez alleges, as an alternative argument in his Amended Complaint, that Police Defendants did not inform the prosecutors of their alleged misconduct in obtaining Vicente's statements. (Dkt. 89, Montanez Amend. Cmplt. ¶ 43,62). Plaintiff Serrano is not pursuing a state law malicious prosecution claim against Defendants Coghlan and Dillon, but similar to Montanez, appears to make an alternative argument that either Defendants Coghlan and Dillon participated in obtaining Vicente's statements or were not aware of the alleged misconduct in obtaining Vicente's statements. (Dkt. 90, Serrano Amend. Cmplt. ¶¶ 18, 41-50, 196-201).[10]

contrary. (SOF ¶¶ 51, 52). These admissions by Plaintiffs doom their malicious prosecution claims against the Police Defendants.

## V.    Mingey Is Entitled To Judgment On Plaintiffs' Intentional Infliction Of Emotional Distress ("IIED") Claims.[11]

To prove an IIED claim under Illinois law, a plaintiff must put forth evidence establishing the following: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe distress." *Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir.2010). Here, Plaintiffs' IIED claims are based on the same conduct that allegedly violated their constitutional rights. Because the constitutional claims against Mingey fail based on Mingey's lack of involvement in the obtaining of Vicente and Wilda's statements (s*ee* § I- II, *supra*), so do their IIED claims. Plaintiffs likewise cannot demonstrate the "extreme and outrageous" conduct necessary to support their IIED claims. *See Cooney v. Casaday*, 746 F.Supp.2d 973, 977-78 (N.D. Ill. 2010) (plaintiff's IIED claim must fail when it is premised on alleged constitutional violations that fail).

## VI.   Plaintiffs Have Failed To Support Their Failure To Intervene Claims (Count V) Against Defendant Mingey.

An officer "who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know…. that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm

---

[11] This Court granted Defendants' motion to dismiss Plaintiffs' IIED claims against all Defendants based on Rankins-related conduct. (Dkt. 88, Opinion and Order, p. 26). Defendant Mingey is now moving for summary judgment to the extent Plaintiffs contend their IIED claim is based on Mingey's involvement with Vargas and Vicente; despite their being no evidence to support a such a claim. Additionally, Serrano's IIED claim is identified as Count IX and Montanez's IIED claim is identified as Count VII. (Dkt. 90, Serrano Amend. Cmplt. ¶¶ 208-212; Dkt. 89, Montanez Amend. Cmplt. ¶ 16-164).[11]

from occurring." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir.2005) (emphasis in original). And in order to survive summary judgment, claims based on failure to intervene require Plaintiffs to establish a viable underlying constitutional violation. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (concluding that in order for there to be a failure to intervene, there must be an underlying constitutional violation). Here, Plaintiffs failed to adequately state an underlying constitutional violation against Defendant Mingey based on Rankins related conduct. As such, because there is no underlying constitutional violation against Sergeant Mingey based on Rankins, the derivative failure to intervene claims against Mingey must also be dismissed. Additionally, Plaintiffs have not produced any evidence that Defendant Mingey was aware of any alleged unconstitutional conduct that occurred in regard to witnesses Vicente or Wilda Vargas as he did not interact with and was not involved in the investigation concerning either witness. (SOF ¶¶ 45-46). As such, there is no evidence that Defendant Mingey could have had an opportunity to intervene and prevent any alleged unconstitutional conduct, which necessarily requires summary judgment on Plaintiffs' failure to intervene claims.

**VII.    Plaintiffs' *Respondeat Superior* And Indemnification Claims Should Be Dismissed To The Extent The Police Defendants Are Dismissed.**

Plaintiffs' *respondeat superior* claims seeks liability against the Defendant City of Chicago, alleging it is "liable as principal for all torts committed by its agents," the Police Defendants. (Cite - Ex. A., p. 45, Ex. B, ¶ 164). *Respondeat superior* liability, however, is "entirely derivative." *Moy v. Cook County*, 159 Ill.2d 519, 524 (1994). Thus, to the extent the claims against the Police Defendants are dismissed, these claims must also be dismissed against the City. *See Kirk v. Michael Reese Hospital and Medical Center*, 117 Ill.2d 507, 532 (1987) (granting dismissal of claim against principal where Plaintiff failed to state a claim against the agent).

**VIII.   The Implications Of The Outstanding Motion For Sanctions Against Serrano.**

Presently before the Court is Defendants' motion for sanctions against Plaintiff Serrano. (Serrano Dkt. 198). In that motion, Defendants request *inter alia,* dismissal of Plaintiff Serrano's lawsuit for the destruction of material evidence by Plaintiff Serrano's agents and, in the alternative, that all recant evidence related to Vicente and Rankins be barred at trial. If this Court declines to dismiss, but bars the recant evidence, Plaintiff Serrano will have no evidence to support any claims against the Defendants. If such relief is granted, Defendants Halvorsen, Mingey, Guevara, and the City of Chicago will seek summary judgment on all claims asserted by Plaintiff Serrano.

## CONCLUSION

For the foregoing reasons, Defendant Mingey is entitled to partial summary judgment on Plaintiffs' federal fabrication of evidence claims (Count I), *Brady* claims (Count II), unlawful pretrial detention claims (Count III), failure to intervene claims (Count V) and Plaintiffs' state law malicious prosecution and IIED claims. Defendants Halvorsen and Guevara are entitled to partial summary judgment on Plaintiffs' federal fabrication of evidence claims as they relate to Timothy Rankins and Wilda Vargas (Count I), *Brady* claims (Count II), unlawful pretrial detention claims (Count III), and state law malicious prosecution claims. Additionally, to the extent the claims against the Police Defendants are dismissed, Plaintiffs' *respondeat superior* and indemnification claims must also be dismissed against the Defendant City of Chicago.

Police Defendants are not moving for summary judgment on Plaintiffs' federal (Count IV) and state law (Serrano Count VIII; Montanez Count VI (sic)) conspiracy claims. Additionally, Defendants Guevara and Halvorsen are not seeking summary judgment on Plaintiffs' due process fabrication of evidence claims (Count I) as they relate to Francisco

Vicente's statements, federal failure to intervene claims (Count V), and Illinois state law IIED claims (Serrano Count IX; Montanez Count VII).

Date:  August 29, 2019                                   Respectfully submitted,

/s/ James G. Sotos                                        /s/ Eileen E. Rosen
JAMES G. SOTOS, Atty. No. 6191975         EILEEN E. ROSEN, Atty. No. 6217428
*One of the Attorneys for Defendants*         *One of the Attorneys for*
*Ernest Halvorsen*                                      *Defendant City of Chicago*

*James G. Sotos*                                          *Eileen E. Rosen*
Jeffrey N. Given                                          Patrick Moran
Jeffrey R. Kivetz                                         Austin G. Rahe
David A. Brueggen                                      Catherine M. Barber
Josh M. Engquist                                         Stacy A. Benjamin
THE SOTOS LAW FIRM, P.C.                           Theresa Berousek Carney
141 W. Jackson Blvd., #1240A                      ROCK FUSCO & CONNELLY, LLC
Chicago, IL 60604                                       321 N. Clark Street, Suite 2200
(630)735-3300                                            Chicago, IL 60654
jsotos@jsotoslaw.com                                 (312)474-1000
                                                                  ersoen@rfclaw.com


/s/Thomas M. Leinenweber
THOMAS M. LEINENWEBER, Atty. No. 6209086
*One of the Attorneys for Reynaldo Guevara*

Thomas E. Leinenweber
James V. Daffada
Kevin E. Zibolski
Michael John Schalka
Leinenweber Baroni & Daffada, LLC
120 N. LaSalle Street, Suite 2000
Chicago, IL 60602
Tel: (312)663-3003
thomas@ilesq.com
jim@ilesq.com
kevin@ilesq.com
mjs@ilesq.com

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that on August 29, 2019, I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants on the attached Service List.

/s/ James G. Sotos
JAMES G. SOTOS, Atty. No. 6191975
*One of the Attorneys for Defendants*
*Ernest Halvorsen and Edward Mingey*

**SERVICE LIST**
**Serrano v. Guevara, et al.,  Case No. 17 CV 02869**
**Montanez v. Guevara, et al., Case No. 17 CV 04560**

*Attorneys for Armando Serrano*
Jennifer A Bonjean
Ashley Blair Cohen
Bonjean Law Group, PLLC
1000 Dean St., #422
Brooklyn, NY 11238
(718) 875-1850
jennifer@bonjeanlaw.com
Ashley@bonjeanlaw.com

*Attorneys for Jose Montanez*
Arthur Loevy
Jon Loevy
Debra Loevy
Russell Ainsworth
Rachel E. Brady
Ruth Z. Brown
Sean Starr
Loevy & Loevy
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312)243-5900
(312)243-5902 Fax
loevylaw@loevy.com
jon@loevy.com
debra@loevy.com
russell@loevy.com
brady@loevy.com
ruth@loevy.com
sean@loevy.com

*Attorneys for Defendant Guevara*
Thomas M. Leinenweber
James Vincent Daffada
Kevin Edward Zibolski
Michael John Schalka
Leinenweber Baroni & Daffada LLC
120 N. LaSalle St., Suite 2000
Chicago, IL 60602
(847) 251-4091
thomas@ilesq.com
jim@ilesq.com
kevin@ilesq.com
mjs@ilesq.com

*Attorneys for Defendant Coghlan:*
Paula Sue Quist
Kristina Katz Cercone
Leigh Ann Krahenbuhl
Morgan Reid Hirst
Jones Day
77 West Wacker Drive, Suite 3500
Chicago, IL 60601-1692
 (312)782-3939
pquist@jonesday.com
kcercone@jonesday.com

***Attorneys for Defendants Cook County and Dillon:***
T. Andrew Horvat
Yulia Nikolaevskaya
Cook County State's Attorney's Office
Complex Litigation Unit
50 West Washington Street, 5th Floor
Chicago, IL 60601
312-603-3362
timothy.horvat@cookcounty.il.gov
 yulia.nikolaevskaya@cookcountyil.gov


***Attorneys for Defendant City of Chicago:***
Eileen E. Rosen
Patrick Moran
Austin Gordon Rahe
Catherine Macneil Barber
Stacy Ann Benjamin
Theresa Berousek Carney
Rock Fusco & Connelly, LLC
Cook County State's Attorney's Office
321 N. Clark Street, Suite 2200
Chicago, IL 60654
erosen@rfclaw.com
pmoran@rfclaw.com
arahe@rfclaw.com
cbarber@rockfuscoconnelly.com
sbenjamin@rfclaw.com
tcarney@rfclaw.com